# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LATOYAL LASHAWN CHEATHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-424-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Latoyal Lashawn Cheatham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v.Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner toshow there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 10, 1982, and was twenty-six years old at the time of the administrative hearing. (Tr. 108). While in high school, she attended special education classes and graduated. She subsequently attended two years of college at Seminole State College, but states that she was in special education courses there as well. (Tr. 18, 41). The claimant alleges that she has been unable to work since March 27, 2007 because of panic attacks and a learning disability. (Tr. 112).

## Procedural History

The claimant applied on March 27, 2007 for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Lance K. Hiltbrand determined the claimant was not disabled in a written opinion dated March 20, 2009. (Tr. 55-63). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. The ALJ determined that the claimant's severe impairments consisted of panic disorder without agoraphobia and mild mental retardation. (Tr. 57). He further found that claimant had

the RFC to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 61). Further the ALJ found that the claimant was capable of understanding, remembering, and carrying out simple tasks with routine supervision, interact appropriately with others at a superficial level but not the general public, and adapt to a work situation. (Tr. 61). Though the ALJ found that the claimant was incapable of performing her past relevant work, she was nevertheless not disabled because there was work in the national economy that she was capable of performing, *i. e.*, auto detailer, laundry sorter, and price marker. (Tr. 63).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of Dr. Ron Smallwood; (ii) by finding that she did not satisfy the criteria of Listing 12.05C; (iii) by failing to include all of her impairments in her RFC findings at step four; and (iv) by failing to include all of her impairments in the hypothetical question posed to the vocational expert. The Court finds merit in the claimant's second contention.

The claimant was evaluated by state consultative examiner Dr. M. Gerald Ball, Ph.D. on July 26, 2007. (Tr. 180-181). During this appointment, Dr. Ball administered the Wechsler Adult Intelligence Scale-III (WAIS-3) and the reading section of the Wide Range Achievement Test-III (WRAT-3). The results of the WAIS-3 indicated that claimant had a verbal IQ of 70, a performance IQ of 64, and a full scale IQ of 65, and

said results placed her in the range of mild mental retardation. (Tr. 181). Further, the claimant was assessed to read at a third-grade level, which Dr. Ball found consistent with her IQ results, and he noted that claimant's test results suggested that though claimant attended two years of college, he had questions about her success while attending. (Tr. 181). Dr. Ball's diagnosed claimant with panic disorder without agoraphobia and mild mental retardation, and assigned to claimant a GAF score of 48. (Tr. 181).

State reviewing physician Dr. Ron Smallwood completed a Psychiatric Review Technique and corresponding Mental Residual Functional Capacity Assessment. (Tr. 185-201). Dr. Smallwood found that claimant's mental retardation and anxiety disorder caused her to experience moderate limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 199). Further, Dr. Smallwood noted in the Mental RFC Assessment that claimant was markedly limited in the following areas: (i) ability to understand and remember detailed instructions; (ii) ability to carry out detailed instructions; and (iii) ability to interact appropriately with the general public. (Tr. 186).

At step three of the sequential evaluation, the ALJ must determine if the claimant meets or equals the requirements for an impairment listed in in the Commissioner's regulations, *see* 20 C.F.R. Part 404, Subpt. P, App. 1, *i. e.*, "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and

explain why claimant was not disabled at step three. *Id.* at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

At step three of the sequential evaluation, the ALJ determined that the claimant's mental retardation, though a severe impairment, did not meet Section 12.05 of the Listing of Impairments because "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 15). This conclusion is, however, unsupported by both the record and the ALJ's findings at steps two and four.

In order to satisfy section 12.05C, the claimant must first satisfy the diagnostic description included in the introductory paragraph, *i. e.*, she must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. In addition to satisfying the capsule definition of mental retardation, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1.

At the outset, the ALJ wholly failed to discuss whether the claimant satisfied the capsule definition of Listing 12.05C. The Commissioner argues "the medical evidence, including Dr. Smallwood's report, refutes a finding that Plaintiff initially manifested mental retardation before age 22[,]" but Dr. Smallwood (whose opinion was given "great weight" by the ALJ) found that the claimant *did* satisfy the capsule definition, *i. e.*, he checked the box next to a statement which specifically encompasses the capsule definition of Listing 12.05 in the evaluation form provided for the claimant (Tr. 193). If this was unclear to the ALJ, he should have re-contacted Dr. Smallwood for clarification. *See Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. . . . [W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue."), *citing* 20 C.F.R. § 404.1512(e) and *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005). And if the ALJ understood but simply rejected this finding, he should have discussed his reasons for adopting some, but not all, of Dr. Smallwood's findings. *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it

is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

Regarding the additional requirements for meeting Listing 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). The claimant clearly satisfies the first prong of the listing since her verbal, performance, and full scale IQ scores all fall below 70, *e. g.*, the claimant scored a verbal IQ of 70, performance IQ of 64, and a full scale IQ of 65 on the WAIS-III. (Tr. 181). The second requirement is that the claimant must have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C. In this regard, the Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352 ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). *But see Edwards ex rel. Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) (clarifying that "[t]he

question under Listing 12.05C . . . is not whether the impairment is in and of itself disabling, [but] "the impairment is something less than 'severe[.]'"). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-53, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience.") [internal citations omitted]. Here, the ALJ determined that claimant's panic disorder *was* a severe impairment at step two. (Tr. 57). Severe impairments by definition (and as mentioned in the opinion) "impose significant restrictions in the claimant's abilities to perform work related activities." (Tr. 57). Thus, contrary to the ALJ's statement regarding Listing 12.05C, the claimant *did* establish both that she had an IQ score in the range of 60-70 *and* a "mental impairment imposing an additional and significant work-related limitation," *i. e.*, panic disorder without agoraphobia.

Because the ALJ failed to properly analyze at step three whether the claimant met Listing 12.05C, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly determine whether the claimant meets the listing and ultimately re-determine her disability.

**Conclusion**

The Court finds correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma